# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | James F. Holderman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 770 | **DATE** | 5/8/2001 |
| **CASE TITLE** | ACCESS LIVING etc vs. CHICAGO TRANSIT AUTHORITY | | |

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**MOTION:**

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ■ Status hearing set for 17 MAY 01 at 9:00 A.M..

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Pursuant to Memorandum Opinion and Order entered this day, defendant's motion for summary judgment is denied. Trial date of June 25, 2001 shall stand. The parties are to submit the joint final pretrial order with motions in limine and supporting memoranda by June 5, 2001. Responses are to be filed by June 12, 2001. Final pretrial conference is set for June 14, 2001 at 2:00 pm.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | Document Number |
|---|---|---|---|
| | No notices required, advised in open court. | | |
| | No notices required. | number of notices | |
| ✓ | Notices mailed by judge's staff. | MAY - 9 2001 date docketed | 53 |
| | Notified counsel by telephone. | | |
| | Docketing to mail notices. | | |
| | Mail AO 450 form. | docketing deputy initials | |
| | Copy to judge/magistrate judge. | 5/8/2001 date mailed notice | |
| JS | courtroom deputy's initials | JS mailing deputy initials | |
| | | Date/time received in central Clerk's Office | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

ACCESS LIVING OF METROPOLITAN )
CHICAGO, a not-for-profit corporation, )
and SHEILA AKHTAR, et. al. )
)
Plaintiffs, )
)
v. ) No. 00 C 0770
)
CHICAGO TRANSIT AUTHORITY, )
)
Defendant. )
)

**DOCKETED**

MAY - 9 2001

MEMORANDUM OPINION AND ORDER

JAMES F. HOLDERMAN, District Judge:

Plaintiffs Access Living of Metropolitan Chicago ("Access Living") and Sheila Akhtar, et. al. filed suit against defendant the Chicago Transit Authority ("CTA") alleging violations of Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12131 et. seq. and Section 504 of the Rehabilitation Act, 29 U.S.C. § 794. Following discovery, defendant CTA filed a motion for summary judgment arguing that plaintiffs lack standing to bring the claims alleged in this litigation and that plaintiffs have failed to present any evidence of ADA and Rehabilitation Act violations. For the following reasons, defendant's motion for summary judgment is DENIED.

BACKGROUND

Briefly, the undisputed facts show that defendant CTA is a provider of public transportation bus and rail services serving Chicago and almost 40 suburbs. Plaintiff Access Living is a non-profit



organization founded in 1980 for the purpose of acting on behalf of people with disabilities in the Chicago area, including working to remove barriers that interfere with the civil rights of people with disabilities to live independently in the communities of their choice, and advocating on behalf of people with disabilities regarding access to work, transportation, education, recreation, and health care in the City of Chicago. Access Living is funded in part by the federal government, and is thus obligated under § 796f(b)(1)(D) of the Rehabilitation Act to promote "equal access of individuals with significant disabilities to society and to all services, programs, activities, resources, and facilities, whether public or private and regardless of the source of funding." In support of its motion for summary judgment, defendant presented substantial evidence of the CTA's efforts to make its bus and rail services accessible to individuals with disabilities, including, for example, installing and maintaining operable mechanical lifts on busses for wheelchairs, maintaining bus doors, maintaining safety clamps, belts, and straps used to secure wheelchairs of persons with mobility impairments on busses, training employees to the use of equipment necessary to provide equal access to persons with disabilities, to pick up disabled riders, to deploy bus lifts when requested, to allow sufficient time for disabled persons to board busses, and to call out the bus number and make "next stop" announcements, placing only accessible busses on accessible bus lines, providing a sufficient number of bus accessible bus lines, keeping train stations elevators in an operating condition, responding to calls from riders seeking assistance on the train system, providing "gap-fillers" to ensure that riders with disabilities have equal access to the train and train station, providing accurate information regarding which elevators are in service, implementing proper emergency evacuation programs, providing sufficient time for disabled persons to embark and disembark trains, announcing train stations and train lines, providing visual information about decisions to reroute or express the

train, providing accessible paths of travel in CTA stations, and training CTA employees to treat persons with disabilities in a courteous and professional manner. In response, plaintiffs presented evidence that each of the CTA's precautions and procedures have failed repeatedly and continue to fail, including multiple incidents of disabled riders being stranded, ignored, and injured while riding the CTA. Access Living and individual members of Access Living brought this action seeking injunctive relief and damages for the CTA's alleged violations of the ADA and the Rehabilitation Act.

## STANDARD OF REVIEW

Under Rule 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In ruling on a motion for summary judgment, the evidence of the nonmovant must be believed and all justifiable inferences must be drawn in the nonmovant's favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S. Ct. 2505, 2513 (1996). This court's function is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial.

A party who bears the burden of proof on a particular issue, however, may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial. Celotex Corp. v. Catrett, 477 U.S. 317, 324 106 S. Ct. 2548, 2553 (1986). There is no issue for trial "unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." Anderson, 477 U.S. at 249, 106 S. Ct. at 2511.

## ANALYSIS

Defendant argues that it is entitled to summary judgment for four reasons: (1) Plaintiffs lack standing to assert ADA and Rehabilitation Act claims against the CTA; (2) a one-year statute of limitations governs plaintiffs' claims; (3) plaintiffs have presented no evidence of intentional discrimination by the CTA within the one-year statute of limitations; and (4) plaintiffs have failed to establish that they are entitled to affirmative injunctive relief. This court addresses each argument raised by defendant CTA. This court will not, however, address at length the evidence presented by plaintiffs to rebut the motion for summary judgment because this court finds that plaintiffs have presented more than sufficient evidence to rebut each of defendant's arguments. This court does not believe it necessary to discuss in detail all of that evidence in this opinion. If the parties are unable to settle this case, defendant and plaintiffs will have the opportunity to present that evidence to a jury.

I.  Standing

Defendant argues that plaintiff Access Living lacks standing to assert the rights of disabled CTA patrons because it is an agency, not an individual. Section 12132 of Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. In support of its position, defendant cites Kessler Institute for Rehabilitation, Inc. v. Mayor and Council of Borough of Essex Fells, 876 F. Supp. 641 (D.N.J. 1995), in which the district court held, with little analysis, that an organization which served the interests of disabled persons lacked standing under the ADA. Id. at 653. However, the majority of other courts addressing this issue have found that

an organization does have standing to sue under the ADA, if organizational or representational standing requirements under the ADA are met. See, e.g., Innovative Health Systems, Inc. v. City of White Plains, 117 F.3d 37, 48 (2nd Cir. 1997) (finding agency had standing to assert a claim under both the ADA and the Rehabilitation Act); Pathways Psychological Support Center v. Town of Leonardtown, 1999 WL 1068488, at *2 (D. Md. Jul. 30, 1999) ("[C]ourts have ruled that the ADA confers the right to sue upon entities who are injured by discrimination because of their association with disabled persons."); Oak Ridge Care Ctr., Inc. v. Racine County, 896 F.Supp. 867, 872-73 (E.D. Wis. 1995) (organization acting as agent of disabled persons has standing to bring action under ADA).

This court agrees with the majority of courts which have considered this issue and finds that organizations serving the needs of disabled persons have standing to bring claims under the ADA if they meet Article III's standing requirements, though they are not themselves individuals with disabilities. As the court reasoned in Oak Ridge Care:

> The Kessler court failed to consider the regulations implementing the ADA. The federal regulations state: "A public entity shall not exclude or otherwise deny equal services, programs, or activities to an individual or entity because of the known disability of an individual with whom the individual or entity is known to have a relationship or association." 28 C.F.R. § 35.130(g) (1994). Moreover, in adopting these regulations, the Department of Justice was following Congressional intent: "Title II should be read to incorporate provisions of titles I and III which are not inconsistent with the regulations implementing Section 504 of the Rehabilitation Act of 1973, such as Section 102(b)(4) of the ADA [codified as 42 U.S.C. § 12112(b)(4)]." H.R. Report No. 101-485(III), 101st Cong., 2nd Sess. 51 (1990), reprinted in 1990 U.S.C.C.A.N. 445, 474. The regulations take their language directly from 42 U.S.C. § 12112(b)(4).

Id. at 872; see also Sullivan v. City of Pittsburgh, 811 F.2d 171, 182 n.12 (3rd Cir. 1987) ("[T]he

5

clear intent of Congress in enacting § 504 [of the Rehabilitation Act] was to make unlawful direct or indirect discrimination against any handicapped individual who would benefit from a federally-funded program or activity. Therefore, if the City denied [] funds to [plaintiff] because the funds would be used for handicapped individuals, it violated § 504.") (citations omitted). Accordingly, Access Living has standing to bring this suit as long as it meets Article III's standing requirements. This court finds that Access Living does, in fact, meet those requirements.

Defendant argues that Access Living lacks standing because it has not suffered a concrete and demonstrable injury and because it has not met the standards for representational standing set out by the Supreme Court. Under Article III, the federal judicial power extends only to "cases" or "controversies." The constitutional limitation on standing eliminates cases in which a plaintiff can demonstrate that no "case or controversy" exists between the parties. Crosetto v. State Bar of Wisconsin, 12 F.3d 1396 at 1403 (7th Cir. 1993). To satisfy Article III, a plaintiff must allege: (1) an immediate threat of injury; (2) fairly traceable to the defendant's conduct; that (3) a favorable federal court decision likely would redress or remedy. Lujan v. Defenders of Wildlife, 504 U.S. 555, 560, 112 S. Ct. 2130, 2136 (1992). The Seventh Circuit has noted that the Article III standing requirements are rather "undemanding." North Shore Gas Co. v. E.P.A., 930 F.2d 1239, 1242 (7th Cir. 1991). The first prong probes for an "actual or imminent" injury that is "concrete and particularized" to the party asserting the claim. Lujan, 504 U.S. at 560, 112 S.Ct. at 2136. In other words, the plaintiff must have an actual stake in the outcome that goes beyond "intellectual or academic curiosity." South East Lake View Neighbors v. Department of Housing and Urban Dev., 685 F.2d 1027, 1033 (7th Cir. 1982). An organization may have standing in its own right, or as representative of its members. This court finds that Access Living has presented sufficient evidence

to support both organizational and representative standing.

The Supreme Court has held that an organization may have standing to assert its own interests if the organization has suffered concrete and demonstrable injury to the organization's activities, not merely a setback to the organization's abstract social interests. Havens Realty Corp. v. Coleman, 455 U.S. 363, 379, 102 S. Ct. 1114, 1124 (1982). In Havens, the Supreme Court found that a drain on an organization's resources in the form of impaired ability to provide counseling and referral services for low and moderate-income homeseekers constituted a concrete injury to the organization. See id., 102 S. Ct at 1124. The Seventh Circuit has interpreted Havens to make clear that the only injury which need be shown to confer standing on an agency is deflection of the agency's time and money from counseling to legal efforts directed against discrimination. Village of Bellwood v. Dwivedi, 895 F.2d 1521, 1526 (7th Cir. 1990). "These are opportunity costs of discrimination, since although the counseling is not impaired directly there would be more of it were it not for the defendant's discrimination." Id.

Here, Access Living has presented sufficient evidence to withstand summary judgment that the time of its organization is devoted to fighting discrimination by the CTA, and that the time spent fighting that discrimination would otherwise be spent counseling, providing independent living skills training and referral services, advocating for the rights of the disabled, and otherwise fulfilling its legislatively mandated care services requirements to the disabled. Access Living employees have devoted time to documenting and responding to complaints of its members regarding their problems with the CTA's failure to provide appropriate access and services to persons with disabilities. In addition, members of Access Living's Board have been late or unable to attend meetings because of problems relating to their disabilities riding the CTA, thereby costing lost time and opportunities

7

to conduct the business of the agency.

Access Living has also established representational standing by virtue of asserting the rights of its members and constituents. An association has standing to bring suit on behalf of its members when: (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit. <u>Hunt v. Washington State Apple Advertising Com'n</u>, 432 U.S. 333, 343, 97 S. Ct. 2434, 2441 (1977). Defendant argues that Access Living's members would not otherwise have standing to sue in their own right because they have not suffered "injury in fact." Defendant argues that plaintiffs have presented no evidence to establish that any alleged incident violated a legally protected interest which is fairly traceable to an action by the CTA. This court finds that suggestion ludicrous. The individual plaintiffs in this case have a legally protected interest in equal access to public facilities, including public transportation. Moreover, contrary to defendant's suggestion, the CTA can be held liable for the acts of its employees. As explained more fully below, plaintiffs have come forth with more than sufficient evidence to show that they have suffered a legally cognizable injury traceable to the acts of defendant to survive a motion for summary judgment. Access Living has also set forth evidence that the interests it seeks to protect in this litigation are germane to its purpose, and that neither the claim asserted not the relief requested requires participation of the individual members of the law suit. Access Living thus has standing to assert the present claims as a representative of its individual members and constituents.

Even if a party satisfies the Article III criteria, there are several judicially self-imposed limits on the exercise of federal jurisdiction that may preclude a litigant's standing, including: the general

prohibition on a litigant's raising another person's legal rights, the rule barring adjudication of generalized grievances more appropriately addressed in the representative branches, and the requirement that a plaintiff's complaint fall within the zone of interests protected by the law invoked. Allen v. Wright, 468 U.S. 737, 751, 104 S. Ct. 3315, 3324 (1984). These prudential limitations on standing eliminate cases "where no individual rights would be vindicated" and restrict "access to federal courts to those litigants best suited to assert a particular claim." Gladstone v. Village of Bellwood, 441 U.S. 91, 100, 99 S. Ct. 1601, 1608 (1979). Unlike the Article III barriers to suit, however, Congress may override the prudential limits on standing by statute. Id., 99 S. Ct. at 1608. "[S]o long as [Article III] is satisfied, persons to whom Congress has granted a right of action, either expressly or by clear implication, may have standing to seek relief on the basis of the legal rights and interests of others." Warth v. Seldin, 422 U.S. 490, 500-01, 95 S. Ct. 2197, 2206 (1975). Where a statute grants standing to the full limits of Article III, courts "lack authority to create prudential barriers to standing" in suits brought under that statute. Havens Realty Corp. v. Coleman, 455 U.S. 363, 372, 102 S. Ct. 1114, 1121 (1982). As stated above, Congress explicitly granted the individuals in this litigation statutory standing to sue, and this court has found that Congress also granted standing to sue to organizations such as Access Living under both the Title II of the ADA and the Rehabilitation Act. Accordingly, plaintiffs have met both the Article III and prudential standing requirements.

II. Statute of Limitations

Defendant argues that plaintiffs' claims are subject to a one year statute of limitations for claims for personal injury against the CTA. Defendant argues that, under the three-step borrowing analysis of Wilson v. Garcia, 471 U.S. 261, 266-267, 105 S. Ct. 1938, 1941-42 (1985), which sets

9

forth the standard for applying the most appropriate statute of limitations period, Illinois' Metropolitan Transit Authority Act provides the appropriate statute of limitations. Wilson mandates that the court consider: (1) the laws of the United States so far as such laws are suitable to carry the civil and criminal civil rights statutes into effect, (2) if no suitable federal rule exists, courts undertake the second step by considering application of state common law, as modified and changed by the constitution and statutes of the forum state, and (3) courts are to apply state law only if it is not inconsistent with the Constitution and laws of the United States. Id. at 267, 105 S. Ct. at 1942. The Metropolitan Transit Authority Act provides that: "No civil action shall be commenced in any court against the Authority by any person for any injury to his person unless it is commenced within one year from the date that the injury was received or the cause of action accrued." 70 ILCS 3605/41. The statute also provides that a claim must first be filed with the office of the secretary of the Board, and set forth the name of the person injured, the date and hour of the accident, the location of the accident, and the attending physician. See id. However, there is another Illinois statute of limitations which is relevant to plaintiffs' claims -- the general two year statute of limitations for personal injury actions found in 735 ILCS 5/13-202. The Seventh Circuit has held that when there are two applicable, but conflicting, statutes of limitations, the general law applicable to personal injuries, and not special laws applicable to subsets of personal injuries, applies. Palmer v. Board of Educ., 46 F.3d 682, 684 (7th Cir. 1995). States are to apply to themselves the same periods of limitation that they allow for private suits within their borders; states' desire to afford ample opportunities to victims in ordinary private litigation gives vicarious protection to victims of constitutional torts. See id. The same reasoning applies to other federal claims, such as those brought under the ADA and the Rehabilitation Act. Accordingly, this litigation is governed by

10

Illinois' general two-year statute of limitations for personal injury claims, 735 ILCS 5/13-202.

III. Prima Facie Case of Discrimination Under ADA

Defendant argues that plaintiffs have failed to present a prima facie case of discrimination under the ADA and Rehabilitation Act because they have failed to present evidence of intentional discrimination, and because evidence of discrimination on the part of CTA employees cannot be imputed to the CTA itself. As noted by plaintiffs, defendant's argument mis-states the law and is wholly without merit.

Contrary to defendant's suggestion, intent to discriminate on the basis of disability is not necessary to make out a prima facie case of discrimination under Title II of the ADA or under the Rehabilitation Act in the Seventh Circuit. Washington v. Indiana High School Athletic Ass'n, Inc., 181 F.3d 840, 846 (7th Cir. 1999). Rather, proof of discriminatory intent is necessary only to justify a court's award of compensatory damages. Alexander v. Sandoval, --- S.Ct. ----, 2001 WL 408983, at *5 (Apr. 24, 2001) (stating that private individuals may not recover compensatory damages under Title VI except for intentional discrimination); 42 U.S.C. § 12133 (remedies under ADA shall be remedies provided for under the Rehabilitation Act); 29 U.S.C. § 794a(2) (damages available under Rehabilitation Act shall be the remedies set forth in Title VI of the Civil Rights Act of 1964).

Defendant makes much of Sandoval, 2001 WL 408983, which was decided after the CTA filed its motion for summary judgment. In its reply brief, defendant argues that under Sandoval, plaintiffs may only bring a claim under the ADA if they can show proof of intentional discrimination and that the regulations upon which plaintiffs rely are no longer good law because those regulations extend to more than intentional discrimination. Defendant argues that because the "remedies, procedures, and rights" available to private litigants under Title VI, the statute at issue in Sandoval,

11

are the same as those under the ADA and Rehabilitation Act, the Supreme Court's analysis "bears directly on the cause of action here." Defendant reads Sandoval far too broadly. In this court's view, the only immediate impact of Sandoval is that it resolves prior ambiguity and makes clear that private plaintiffs must prove intentional discrimination to recover damages under the ADA. Sandoval did not, however, abrogate or limit plaintiffs' right to bring this action.

Defendants err in equating proof of "intentional discrimination," which plaintiffs undoubtedly must prove, with animus toward with persons with disabilities. Under Title VI, at issue in Sandoval, intent to discriminate is limited to a desire to deny rights to someone because of their race, color, national origin, religion, or gender. Under the language of the ADA itself, however, discrimination against disabled persons includes the failure to take certain affirmative steps, including purchasing or leasing accessible busses (42 U.S.C. § 12142), providing paratransit services (§ 12143), constructing any new facilities designated for public transportation services to be accessible to and usable by individuals with disabilities (§ 12146), and making altered portions of major stations accessible (§ 12147). Under all the listed sections of the ADA itself, failure to take those affirmative steps "shall be considered" discrimination, without regard to the intent of the entity in failing to take those steps. As such, in this case, unlike in Sandoval and Title VI, plaintiffs have plead and presented evidence of the precise type of discrimination defined by Congress -- the failure to make certain reasonable modifications. Furthermore, the regulations relied upon by plaintiffs do not, as the Court found regarding Title VI's regulations in Sandoval, expand the meaning of discrimination. Rather, the regulations at issue here simply clarify the definition of discrimination (i.e., what accommodations are reasonable), and therefore are not an invalid basis under which to bring suit under Sandoval.

12

The Seventh Circuit has laid out three methods of proof for § 504 Rehabilitation Act or Title II ADA claims: discrimination under both acts may be established by evidence that (1) the defendant intentionally acted on the basis of the disability, (2) the defendant refused to provide a reasonable modification, or (3) the defendant's rule disproportionally impacts disabled people.[1] See Washington, 181 at 847. Plaintiffs have presented sufficient evidence of discrimination under all three methods of proof to survive a motion for summary judgment. Importantly, plaintiffs' evidence, if believed, would certainly show that the CTA failed to make reasonable modifications to its rail and bus services necessary to provide "meaningful access" to persons with disabilities. Moreover, again contrary to defendant's argument, even if plaintiffs had the burden to show intentional discrimination, plaintiffs have met that burden by presenting evidence which, if believed, would show that the CTA has shown "deliberate indifference to the strong likelihood that pursuit of its questioned policies will likely result in a violation of federally protected rights." Powers v. MJB Acquisition Corp., 184 F.3d 1147, 1153 (10th Cir. 1999).

Defendant also argues that the CTA can not be held liable for the acts of its employees because Title II of the ADA and the Rehabilitation Act govern only "pubic entities" (ADA) and "programs or activities" (Rehabilitation Act), and do not explicitly include agents of such public entities or programs. In support, defendant cites Smith v. Metropolitan School Dist., 128 F.3d 1014 (7th Cir. 1997), in which the Seventh Circuit found that Title VI does not apply to actions taken by

---

[1] In light of Sandoval and this court's discussion of its implications, it is doubtful that individual plaintiffs would have a cause of action under the ADA merely by proof of a disproportionate impact on disabled persons. This court need not decide that issue, however, as plaintiffs have presented sufficient evidence to survive summary judgment under the other two methods of proof -- intentional discrimination and failure to make reasonable modifications to public transportation.

an employee teacher of a school district. Id. at 1023. The Seventh Circuit has not addressed whether the same reasoning applies to claims under Title II of the ADA and the Rehabilitation Act.

However, even if respondeat superior principles do not apply to claims under Title II of the ADA and the Rehabilitation Act, plaintiffs' claims based upon the acts of CTA employees still survive summary judgment. Plaintiffs claim that the failure to provide meaningful access to train and bus services is the fault of the CTA in its lack of training employees and failure to maintain equipment. To the extent plaintiffs' claims are based upon CTA employees' failure to accommodate them, plaintiffs have presented evidence that the CTA itself is responsible for those actions. Accordingly, the CTA could be held liable for those actions insofar as plaintiffs can show that fault lies with the CTA. The Supreme Court has held, in the context of Title VI, that a school can be held liable for the acts of its teachers insofar as its response to those discriminatory acts amount to deliberate indifference. Gebser v. Lago Vista Independent Sch. Dist., 524 U.S. 274, 290, 118 S. Ct. 1989, 1999 (1998). As stated above, plaintiffs have come forward with sufficient evidence to create a genuine dispute that the CTA has been deliberately indifferent to discrimination on the basis of disability by the CTA itself and by its employees. Accordingly, defendant's motion for summary judgment on the basis that plaintiffs have presented no evidence of discrimination on the part of the CTA itself must fail.

Finally, this court rejects defendant's invitation to find that the CTA's standard operating procedures and policies do not violate federal law without considering whether those policies and procedures actually function as they are designed to comply with federal law. This court also rejects defendant's invitation to make credibility determinations as to whose expert is best suited to evaluate whether the CTA's practices violate the ADA. Plaintiffs have presented "definite, competent

evidence to rebut the motion" and therefore have successfully opposed defendant's motion for summary judgment. Smith v. Severn, 129 F.3d 419, 427 (7th Cir. 1997).

IV.     Availability of Affirmative Injunctive Relief

Finally, defendant argues that plaintiffs have failed to establish that they are entitled to affirmative injunctive relief. Again, in so arguing, defendant ignores the standards for summary judgment motions and puts the onus on plaintiffs to prove their case at this stage. This court has already determined that plaintiffs have created a genuine dispute as to whether they can succeed on the merits by showing violations of the ADA and Rehabilitation Act by the CTA. This court cannot judge at this early stage whether plaintiffs will be able to prove that they would suffer irreparable harm in the absence of an injunction or whether that harm would outweigh harm to defendant, nor whether the public interest would be served by injunctive relief. Accordingly, plaintiff's prayer for injunctive relief is not amenable to summary judgment.

## CONCLUSION

For the reasons stated, defendant's motion for summary judgment is DENIED. The parties are strongly urged to discuss settlement of this case. If the parties cannot resolve their differences, this case will proceed to trial, as scheduled, on June 25, 2001 at 9:00 a.m. This case is set for report on status and to discuss settlement on May 17, 2001 at 9:00 a.m. If the case is not settled, the parties are to comply with following dates prior to the trial. The proposed final pretrial order is due on June 5, 2001. Any motions in limine which the parties wish to file should be filed separately on the same

day, June 5, 2001. Any responses to motions in limine are to be filed by June 12, 2001. The final pretrial conference is set for 2:00 p.m. on June 14, 2001. Counsel of record are to attend.

       ENTER:

       *James F. Holderman*
       JAMES F. HOLDERMAN
       United States District Judge

DATE: May 8, 2001